# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

STEVEN G. MILLETT and )
MELODY J. MILLETT, )
　　　　　　　　　　　　　　　　　　　　　　)
　　　　　　Plaintiffs, )
　　　　　　　　　　　　　　　　　　　　　　) CIVIL ACTION
v. )
　　　　　　　　　　　　　　　　　　　　　　) No. 04-2450-CM
　　　　　　　　　　　　　　　　　　　　　　)
FORD MOTOR CREDIT COMPANY, )
　　　　　　　　　　　　　　　　　　　　　　)
　　　　　　Defendant. )
　　　　　　　　　　　　　　　　　　　　　　)

## MEMORANDUM AND ORDER

Plaintiffs Steven G. and Melody J. Millett bring this action alleging that defendant Ford Motor Credit Company violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681s-2, when it failed to accurately compile or report disputed credit information. Both parties have filed motions for summary judgment (Docs. 59 and 65). The court has reviewed the record, and finds that defendant's motion should be granted.

## I. FACTUAL BACKGROUND[1]

Abundio Cuatle and/or Abundio Perez purchased vehicles from a Ford dealer in Montebello, California under retail installment contracts on June 1, 2001; September 22, 2001; and April 25, 2002. On May 29, 2002, plaintiff Steven Millett purchased a vehicle from a Ford dealer in Shawnee Mission,

---

[1] The court construes the facts in the light most favorable to the non-moving party pursuant to Fed. R. Civ. P. 56. The court has combined the facts proposed by both parties, and included only those that are relevant, material, and properly supported by the record.

Kansas, also under a retail installment contract. All of the installment contracts were sold to defendant. When Mr. Cuatle/Perez completed the credit applications for his vehicles, he used the social security number of Mr. Millett.

Somewhere around January 24, 2003, plaintiffs discovered that Mr. Millett's social security number was already being used by someone as an electronic bill payment identifier. According to Mrs. Millet, she put a "fraud alert" on the consumer credit report of Mr. Millett as of January 24, but she did not specify which credit reporting agencies ("CRAs") she contacted. On February 3, 2003, at defendant's request, Mrs. Millett faxed a copy of Mr. Millett's birth certificate, social security card, and a police report to defendant. In March 2003, plaintiffs' attorney wrote to defendant and TransUnion, a CRA, and informed them that Mr. Cuatle/Perez was fraudulently using Mr. Millett's social security number. On April 2, 2003, plaintiffs' attorney contacted defendant again, and threatened to file suit if defendant did not respond within ten days. Plaintiffs' attorney wrote the other CRAs in May 2003.

On April 15, 2003, a representative of TransUnion contacted defendant by telephone to verify the name and address on the account of Abundio Cuatle. Defendant's record of this phone call, which is included on the Contact History Report for Abundio Cuatle's account, includes the computer code "RC OTH UN WA ANS AARA." This code translates as "Receive call Other Undetermined Explain Process Close."[2] TransUnion informed Mr. Millett on April 23, 2003 that

---

[2] On March 11, 2004, defendant adopted a procedure under which its employees should enter this code with a report of identity theft. The procedure also requires employees to note "ID THEFT CLAIM BEING INVESTIGATED" permanently on the record. Although plaintiffs suggest that this information is significant, the court finds it irrelevant to the issues at hand. March 11, 2004 is well after the dates that are at issue here.

"our office has investigated the information contained under the name Abundio C. Perez with the social security number of [redacted].  The creditors appearing on this file have verified the use of this social security number in connection with their accounts.  Therefore, our office will continue to maintain this information under that identification."  Defendant was listed among twenty-seven other creditors.

On April 30, 2003, defendant faxed a fraud affidavit to Mrs. Millett, which she completed and had her husband sign.  On June 23, 2003, Mrs. Millett e-mailed William Clay Ford regarding the unauthorized use of her husband's social security number.  Defendant conducted an investigation of Mrs. Millett's allegations and determined that Mr. Cuatle/Perez had obtained two vehicles under false pretenses.  Apparently on June 27, Mr. Cuatle/Perez admitted to an employee of defendant that he had purchased the social security number and that he was in the country illegally.  Defendant repossessed the vehicles on June 28, and on July 1, defendant requested that the three major credit reporting agencies delete the "tradelines" with respect to these two accounts.[3]  On August 6, 2004, TransUnion contacted defendant "to get more information in the account of Abundio P. Cuatle."

An Automated Consumer Dispute Verification ("ACDV") is an electronic notification received by defendant through a system called "E-Oscar."  An ACDV is a form that a CRA uses to verify creditor information.  A consumer initiates the process, and the CRA forwards the form electronically to a creditor for investigation and response within a time period specified.  The CRA then deletes a disputed item from the consumer's credit history if the creditor does not respond by the response deadline.

Since August 2004, defendant has had a policy whereby E-Oscar communications were to be retained for twenty-four months.  Prior to that time, defendant's policy was to retain ACDV responses in its

---

[3] A "tradeline" is a record sent to a CRA that gives information about a particular credit obligation belonging to a consumer.

E-Oscar database for 120 days. On January 17, 2005, counsel for plaintiffs notified defense counsel that they anticipated discovery pertaining to electronically-stored documents. On August 25, 2005, defendant acknowledged in response to discovery requests that it could not locate any information from CRAs regarding the accounts of the Millets or Mr. Cuatle/Perez. At that time, defendant's databases contained "a limited amount of information from 2004" and information from 2005.

## II.  STANDARDS FOR JUDGMENT

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

## III.  DISCUSSION

### A.  FCRA Claim

Whether plaintiffs' FCRA claim can proceed rests on one issue: Have plaintiffs presented any evidence that defendant received notice of a dispute from a CRA? Because the court answers this question in the negative, defendant's motion for summary judgment must be granted.

The FCRA provides that consumers may bring a private cause of action against a furnisher of credit information. *See* 15 U.S.C. § 1681s-2(b); *Nelson v. Chase Manhattan Mortgage Corp.*, 282 F.3d 1057, 1059-60 (9th Cir. 2002); *Abbett v. Bank of Am.*, 2006 WL 581193, at *3 (M.D. Ala. Mar. 8, 2006); *Aklagi v. NationsCredit Fin.*, 196 F. Supp. 2d 1186, 1193 (D. Kan. 2002) (citing *Nelson*, 282 F.3d at 1059-60). Because the parties agree that defendant is a "furnisher of credit information" and that

-4-

plaintiffs are "consumers," the court examines defendant's obligations under § 1681s-2(b). That section of the FCRA requires that a furnisher of credit information conduct an investigation "[a]fter receiving notice pursuant to section 1681i(a)(2) of this title of a dispute" regarding a consumer's credit. 15 U.S.C. § 1681s-2(b). In turn, § 1681i(a)(2) provides that a CRA must provide a furnisher of credit information with prompt notice when a consumer disputes information.

Under the plain language of §1681s-2(b), a furnisher of credit information has a duty to investigate a dispute only after receiving notice from a CRA – not merely notice from a consumer. *See Aklagi*, 196 F. Supp. 2d at 1193 (citing *Hasvold v. First USA Bank, N.A.*, 194 F. Supp. 2d 1228, 1236 (D. Wyo. 2002) (reasoning that a § 1681s-2(b) private cause of action is available only where the furnisher received notice of the dispute from a consumer reporting agency, as opposed to the consumer); *Scott v. Amex/Centurion S & T*, 2001 WL 1645362, at *4 (N.D. Tex. Dec. 18, 2001) ("The duties created by subsection (b) arise . . . only after the furnisher receives notice from a consumer reporting agency that a consumer is disputing credit information."); *Fino v. Key Bank*, 2001 WL 849700, at *5 (W.D. Pa. July 27, 2001) (reasoning that a § 1681s-2(b) private cause of action is available only where the furnisher received notice of the dispute from a consumer reporting agency, as opposed to the consumer); *Jaramillo v. Experian Info. Solutions, Inc.*, 155 F. Supp. 2d 356, 363 (E.D. Pa. 2001) ("[T]o state a cause of action under 1681s-2(b) requires a pleading that a consumer reporting agency notified a furnisher of a dispute. . . ."); *Yelder v. Credit Bureau of Montgomery, L.L.C.*, 131 F. Supp. 2d 1275, 1289 (M.D. Ala. 2001) ("[A] furnisher of information has no duty under § 1681s-2(b) until a consumer reporting agency, and not a consumer, provides notice to the furnisher of information of a dispute."); *Dornhecker v. Ameritech Corp.*, 99 F. Supp. 2d 918, 928-29 (N.D. Ill. 2000) ("Section 1681s-2(b) triggers a

furnisher's duty to investigate allegedly erroneous information when that furnisher has received notice from a *consumer reporting agency* that the credit information is disputed." (emphasis in original))). Although the statute does not define the notice that must be received from a CRA, at least one court has held that something more than a mere contact by a CRA is required. *See, e.g.*, *Whisenant v. First Nat'l Bank & Trust Co.*, 258 F. Supp. 2d 1312, 1317 (N.D. Okla. 2003) (finding that the defendant did not violate its FCRA duty where the defendant was in regular contact with the CRA and knew of the plaintiffs' dispute, but did not receive actual notice of the dispute by the CRA). It appears that completion of a ACDV form would constitute sufficient notice. *See, e.g.*, *Westra v. Credit Control of Pinellas*, 409 F.3d 825, 827 (7th Cir. 2005); *Johnson v. MBNA Am. Bank, NA*, 357 F.3d 426, 429 (4th Cir. 2004); *Abbett*, 2006 WL 581193, at *4.

Plaintiffs have presented no evidence that defendant received notice of a dispute from a CRA. Admittedly, plaintiffs themselves contacted defendant several times about the misuse of Mr. Millett's social security number. But defendant's only contacts from a CRA were on April 15, 2003 and August 6, 2004. On April 15, 2003, TransUnion asked defendant to verify the name and address of Abundio Cuatle. There is no evidence in the record indicating that defendant knew that this contact had anything to do with Mr. Millett. More importantly, the record does not show that defendant knew – based on TransUnion's phone call – that Mr. Millett was disputing any credit information being reported by defendant. The court finds it significant that defendant's notation of the TransUnion conversation apparently was made only on the Contact History Report of Mr. Cuatle/Perez's account – not Mr. Millett's account. The parties have not directed the court to the Contact History Report of Mr. Millett's account, and the court has not found it in the record.

-6-

Likewise, on August 6, 2004, TransUnion contacted defendant to get information on the account of Abundio Cuatle. Again, there is no indication in the record that TransUnion mentioned Mr. Millett's name or otherwise indicated that the call was in response to a dispute by Mr. Millett.

Plaintiffs also have not presented evidence that any CRA sent an ACDV to defendant. Plaintiffs suggest that the lack of evidence is defendant's fault, and even imply that spoliation of evidence has occurred. To the extent that plaintiffs are asking the court to presume that a CRA sent an ACDV to defendant because defendant has lost or destroyed records, the court finds that plaintiffs have wholly failed to meet their burden of showing that defendant acted in bad faith. *See Aramburu v. Boeing Co.*, 112 F.3d 1398, 1407 (10th Cir. 1997) (requiring a showing of bad faith before the court will permit an inference that "production of the document would have been unfavorable to the party responsible for its destruction").

Without notice by a CRA of a dispute, defendant's obligations under § 1681s-2(b) were not triggered. It is unfortunate that Mr. Cuatle/Perez stole Mr. Millett's social security number. It is more unfortunate that the Milletts had to spend their personal time trying to rectify the situation. But it is unfair to hold defendant responsible for not investigating a dispute when there is no evidence that defendant was notified by a CRA of the dispute. 15 U.S.C. § 1681s-2(b) only contemplates that a furnisher of credit information can be civilly liable where it has been notified of a dispute by a CRA. In the absence of evidence of such notification, this court cannot offer plaintiffs any relief. *See Aklagi*, 196 F. Supp. 2d at 1193 ("[Plaintiffs] have produced evidence that they notified consumer reporting agencies and [the furnisher of credit information] of the dispute. However, they have failed to make the critical link between the consumer reporting agencies and [the furnisher].").

**B. Injunctive Relief**

Plaintiffs also seek injunctive relief based on the same facts set forth in support of their FCRA claim. To the extent that this claim is still viable in light of the court's dismissal of plaintiffs' underlying FCRA claim, the court dismisses the claim on other grounds. Under the FCRA, injunctive relief is not available for private litigants. *See Washington v. CSC Credit Servs. Inc.*, 199 F.3d 263, 268 (5th Cir. 2000); *Jarrett v. Bank of Am.*, – F. Supp. 2d – , 2006 WL 709322, at *3 (D. Kan. Mar. 20, 2006) (citing *Washington*, 199 F.3d at 268). And the FCRA preempts Kansas common law to the extent that it is inconsistent with federal law.[4] *See* 15 U.S.C. § 1681t(a); *Jarrett*, 2006 WL 709322, at *3; *Poulson v. Trans Union, LLC*, 370 F. Supp. 2d 592, 593 (E.D. Tex. 2005). For these reasons, the court finds that plaintiffs' claim for injunctive relief should be dismissed.

## C. Conclusion

The court has considered all of the arguments presented by the parties, although they are not all discussed here. Some of the arguments are irrelevant to the claims at issue in this case. Others have been rendered moot by the court's decision here. After considering all of the evidence of record and the positions of the parties, the court finds that plaintiffs have no private cause of action against defendant.

**IT IS THEREFORE ORDERED** that Defendant Ford Motor Credit Company's Motion for Summary Judgment (Doc. 59) is granted.

**IT IS FURTHER ORDERED** that plaintiffs' Motion for Partial Summary Judgment (Doc. 65) is denied.

---

[4] Plaintiffs suggest that if defendant did not receive notice of a dispute from a CRA, then their claim for equitable relief is not preempted. Although defendant did not receive notice from a CRA, the record does contain evidence that defendant received notice of the dispute from plaintiffs themselves. This court recently held that notice from a consumer is sufficient to trigger the preemption doctrine. *See Holland v. GMAC Morg. Corp.*, 2006 WL 1133224, at *12 (D. Kan. Apr. 26, 2006).

-9-

Dated this 9th day of May 2006, at Kansas City, Kansas.

                                            **s/ Carlos Murguia**
                                            **CARLOS MURGUIA**
                                            **United States District Judge**